1
2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

3  U.S. COMMODITY FUTURES TRADING )
   COMMISSION )
4                                  )
5         Plaintiff, )
                                   )
6      vs. )                          Case No.: 3:06cv2540-TEH
                                   )
7  GILBERT PHILIP CASTILLO, JR. )
   AND CASTLE )                       **CONSENT ORDER OF**
8  CORPORATION, d/b/a/ )              **PERMANENT INJUNCTION AND**
9  WALLSTREETWAR.com, d/b/a )         **OTHER EQUITABLE RELIEF AS TO**
   CASTILLORESEARCH.com.d/b/a )       **DEFENDANT GILBERT PHILIP**
10 NEVER-LOSE.com )                   **CASTILLO, JR.**
                                   )
11        Defendant. )
12 _____ )
                                    I.
13

14                          INTRODUCTION

15

16      Plaintiff, U.S. Commodity Futures Trading Commission, ("Commission") filed this

17 action in this Court on April 12, 2006, charging Defendant Gilbert Philip Castillo, Jr. ("Castillo")

18 and Castle Enterprise Corporation ("Castle") d/b/a WallStreetWar.com, d/b/a

19 CastilloResearch.com, d/b/a/ Never-Lose.com with violations of Sections 4o(1)(A) and (B),

20 4k(3) and 4m(1) of the Commodity Exchange Act ("CEA"), as amended, 7 U.S.C. §§ 6o (1) (A)

21 & (B), 6k(3) and 6m(1) (2002), and Sections 4.41(a)(1) and (2) and 4.41(b)(1) of the

22
23 Commission Regulations ("Regulations"), 17 C.F.R. §§ 4.41 (a)(1) and (2) and 4.41(b)(1)

24 (2005), by committing fraud in connection with unregistered commodity trading advisory

25 activities. The Complaint seeks a permanent injunction, restitution, civil monetary penalties and

26 other ancillary relief.

27

28

1

## II.

## CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint without a trial on the merits or further judicial proceedings, Castillo hereby:

1.      Consents to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief as to Defendant Gilbert Philip Castillo, Jr. ("Order");

2.      Affirms that he has read and agrees to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any person, to induce consent to this Order, other than as set forth specifically herein;

3.      Acknowledges service of the Summons and Complaint;

4.      Admits that this Court has jurisdiction over him and the subject matter of this action pursuant to Section 6c of the CEA, 7 U.S.C. § 13a-1 (2002);

5.      Admits that venue properly lies with this Court pursuant to Section 6c of the CEA, 7 U.S.C. §13a-1 (2002);

6.      Waives: (a) all claims that he may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000), and/or Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1, et seq. (2007), relating to, or arising from, this action; (b) all claims that he may possess under the Small Business Regulatory Enforcement Act, Pub. L. 104-121, Subtitle B, Section 223, 110 Stat. 862-63 (March 29, 1996), relating to, or arising from, this action; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal in this action;

2

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

7.      Consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order and for any other purposes relevant to this action;

8.      Agrees that neither he nor his agents, employees, representatives or attorneys acting under his control shall take any action or make any public statement denying, directly or indirectly, any allegations in the Complaint or findings of fact or conclusions of law in this Order, or creating or tending to create the impression that either the Complaint or this Order is without factual basis; provided, however, that nothing in this provision shall affect his: i) testimonial obligations, or ii) right to take legal positions in other proceedings to which the Commission is not a party.  Castillo shall undertake all steps to assure that all of his agents, employees, representatives, and attorneys understand and comply with this agreement.

9.      Neither admits nor denies the allegations of the Complaint or the findings of fact or conclusions of law contained in this Order, except as to jurisdiction and venue, which he admits.

10.     Agrees, and the parties to this Order intend, that the allegations of the Complaint and the findings of fact and conclusions of law made by this Court in this Order shall be taken as true and correct and given preclusive effect, without further proof, in any proceeding in bankruptcy relating to Castillo, any proceeding to enforce the terms of this Order, or in any proceeding to revoke, restrict, or condition the registration of any of the Defendants pursuant to Section 8a of the Act, 7 U.S.C. § 12a(1), and/or Part 3 of the Regulations, 17 C.F.R. § 3.

11.     Castillo shall provide immediate notice to this Court and the Commission, pursuant to the provisions of Paragraph 67 herein, via certified mail of any bankruptcy proceeding filed by, on behalf of, or against him, and he shall likewise provide immediate notice of any change of address, telephone number, or contact information.

3

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

12.     Consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order and for any other purposes relevant to this action, even if Castillo now or in the future resides outside this jurisdiction.

III.

FINDINGS OF FACT AND CONCLUSION OF LAW

13.     The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore, further directs the entry of the following findings of fact and conclusions of law, pursuant to Section 6c of the CEA, 7 U.S.C. § 13a-1 (2002), as set forth herein.

A.     DEFINITIONS

14.     Section 1a(6) of the CEA defines a "commodity trading advisor" as any person who "for compensation or profit ... advise[s] others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in" commodity futures or "issue(s) or promulgate(s) analyses or reports concerning" trading in commodity futures.

15.     Section 4o(1) of the CEA, 7 U.S.C. § 6o (2002), prohibits commodity trading advisers ("CTA") or associated persons ("AP") of commodity trading advisers from directly or indirectly: (1) employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or, (2) engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

16.     Regulations 4.41(a)(1) and (2), 17 C.F.R. §§ 4.41(a)(1) and (2), make it unlawful for a CTA, or any principal thereof, to advertise in any manner which: "(1) employs any device,

4

scheme or artifice to defraud any participant or client or prospective participant or client; or (2) involves any transaction, practice or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client."

17.     Regulation 4.41(b)(1), 17 C.F.R. § 4.41(b)(1), makes it unlawful for any person to present the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a commodity pool operator, CTA, or any principal thereof, unless such performance is accompanied by a prescribed cautionary statement concerning the limitations of simulated or hypothetical trading results.

18.     Section 4m(1) of the CEA, 7 U.S.C. § 6m(1), makes it unlawful to make use of the mails or instrumentalities of interstate commerce to provide commodity trading advice to 15 or more persons during the preceding 12-month period, or to hold oneself out generally to the public as a CTA, unless registered as a CTA under the CEA.  Section 4k(3) of the CEA, 7 U.S.C. § 6k(3), makes it unlawful to be associated with a CTA as an officer, employee, consultant, or agent in any capacity which involves the solicitation of a client's or prospective client's discretionary account unless registered as an AP of a CTA under the CEA.

B.     FINDINGS OF FACT

19.     The Commodity Futures Trading Commission is an independent federal regulatory agency that is charged with the responsibility for administering and enforcing the provisions of the CEA, as amended, 7 U.S.C. §§ 1 *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*

20.     Gilbert Philip Castillo, Jr. resides at 1590 3rd Avenue, Walnut Creek, CA 94597. Castillo is the self-stated sole owner and president of Castle.  Castillo conducted his business

5

1    directly and through Castle, doing business as WallStreetWar.com ("WallStreetWar"),

2 CastilloResearch.com ("CastilloResearch") and Never-Lose.com ("Never-Lose") (collectively,

3 the "Wall Street War websites"). Castillo has never been registered with the Commission in any

4 capacity, nor is he otherwise exempt from registration with the Commission.

6      21.      Castle Enterprise Corporation, according to Castillo, is a Nevis corporation that

7 he founded in 1998 that has used the same address as Castillo's former addresses: 1587

8 Springbrook Road, Walnut Creek, CA 94597 and/or 125 Crosby Court #2, Walnut Creek, CA

9 94598. Castillo is president of Castle. Castle has never been registered with the Commission in

10 any capacity. A Final Judgment by Default, Permanent Injunction and Ancillary Relief has

11

12 previously been entered by the Court against Castle. *See* Docket Entry 60.

13      22.      From at least February 1, 1999 to April 12, 2006 (the "relevant time") Castillo

14 individually and through his company, Castle, made false and misleading representations

15 through the Wall Street War websites to solicit members of the general public to purchase

16 commodity trading advice and services related to the trading of S&P 500 commodity futures and

17

18 options contracts. During this time period, Castillo and Castle fraudulently solicited $814,858.89

19 from clients.

20      23.      Castle, through the Wall Street War websites, acted as a CTA without being

21 registered as such with the Commission. Castillo, as an officer and agent of Castle, solicited

22

23 clients' or prospective clients' discretionary accounts on behalf of Castle and offered to the

24 public advisory services, without being registered with the Commission as an AP of a CTA.

25      24.      While soliciting clients for managed accounts and marketing other advisory

26 services, Castillo made misrepresentations of material fact and omitted material information

27

28 regarding the profitability of their trading activities, trading advice, experience, and the Wall

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

Street War track record. Castillo also touted the purportedly highly profitable performance of the managed account program and advisory services being offered without revealing that such "performance" was based, at best, on hypothetical or simulated performance.

     i. The Wall Street War Websites

25.     Castillo and Castle marketed a number of commodity-related services through the Wall Street War websites, including managed account programs, publicly offered commodity futures and options advisory services, and training courses.

26.     Castillo represented in the Wall Street War websites that Castillo founded Castle in 1994, and that "two more companies have begun" providing commodity futures and options advisory services.

27.     One of these purported companies was CastilloResearch, which "primarily handles institutional and managed funds."

28.     Another Castillo company was Wall Street War, "which is designed to reap the rewards... through an exciting nightly newsletter and day trading service."

29.     The Wall Street War websites portrayed Castillo as having "had an extensive career in the investment field rising up from the 1980's" and stated that he is considered "one of the most accurate & profitable stock and stock index trader/advisors in the world today," who now "spends his time managing money and/or consulting to institutions/individuals."

30.     Castillo and Castle represented that "we have found our niche over the years through experience" and have "pioneered the art of successful stock market index timing/trading and applying 'inside' information."

31.     The Wall Street War Advisory Service ("Advisory Service") was touted by Defendant as "[p]roven to be the most accurate and profitable advisory available!" and claimed

7

that the system had a track record of 90-96 % profitability.  Defendants also claimed that "[o]ur amazing Crystal ball method" allows them to forecast market moves.

32.     Prospective clients were induced to subscribe to the Advisory Service by, among other things, Defendants' offer to provide a "free service that gives you 1-2 free stock and/or stock index trades each month," that yielded "12 winners (1 per month)" for each month in 2002 and with an overall "track record" of "17 winning trades with only 1 loss."  They further asserted that a "War Room" was also a part of the Wall Street War Advisory Service trading system that charts and follows the S&P 500 futures markets and provides "EXACT trades! Entries, exits and stops!"

33.     Castillo and Castle, through the Wall Street War websites, displayed a chart that showed an "incredible performance table" that represents that the Advisory Service offered to the public by Wall Street War has "maintained tremendous returns in different market conditions for six years!"  On this chart, the purported returns for each year from 1998 through 2002 range from 302% to 447%.

34.     Through the Wall Street War websites, Castillo made representations concerning the purportedly highly profitable performance and near-perfect accuracy of the Advisory Service being offered by the Defendants without revealing that it was based, at best, on hypothetical or simulated performance, and without displaying the required statement prominently disclosing the inherent limitations of hypothetical or simulated performance.

35.     Castillo and Castle, through the Wall Street War websites, called their Managed Account Program the "backbone of everything we do."  The program consisted of "position trading [f]utures contracts, options on future[s]values and day trading futures," primarily in the

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

S&P 500 futures contract. Castillo claimed to be trading his own money according to the methodology employed in the Managed Account Program.

36. Castillo and Castle, through the Wall Street War websites, also offered an Index Trading Course, claiming that: "You can be amongst the top index traders in the world when I get done with you." These courses are offered on sale for "$19,995 before the price jumps to $50,000." Castillo states: "I don't apologize for the price of my system. Once you use it you will know why I consider it an insult to take less than $100,000 for it." Profits are claimed to be "continuous profits day after day & year after year as the mathematical perfection rakes in huge profits."

ii. Fraudulent Misrepresentations

37. Castillo, knowingly or with reckless disregard for the truth, made the following false material representations, among others:

a) Castillo is considered "one of the most accurate & profitable stock and stock index trader/advisors in the world today."

b) Castillo possesses "inside information" that produces a "near perfect record of stock market index timing."

c) Castillo is profitably trading his own money according to the trading methodology employed in the Managed Account Program and that "[t]here is not another stock index manager that does this."

d) The Wall Street War Advisory Service is "[p]roven to be the most accurate and profitable advisory available," with a track record of 90-96% accuracy and profitability, with "tremendous returns in different market conditions for 6 years!" that ranged from "302%" to "447%."

9

e) By purchasing the Index Trading Course: "[Y]ou can be amongst the top index traders in the world when I get done with you."

f) The Index Trading Course is promised to impart trading knowledge that will result in "continuous profits day after day & year after year as the mathematical perfection rakes in huge profits."

38.     In fact, many of the advisory services offered by Castillo and Castle to the public never operated, and clients were abandoned after purchasing trading systems or training courses, receiving little or nothing of value and losing their money.  Clients lost $814,858.89 through purchasing Defendants' trading systems and training courses, and in trading accounts managed by the Defendants.

39.     With regard to the "Managed Account Program," the Wall Street War websites stated that the program has "highly profitable results" from the "professional management of your assets."  Castillo claimed to be successfully trading his own money according to the trading methodology he uses in the managed account program, stating that "[o]ur clients have the comfort … that there [sic] money is being treated the exact same way."  These claims are false because (1) the seven accounts that Castillo directed for others under the "Managed Account Program" all lost money, (2) Castillo has admitted that the claimed successful track record of the "Managed Account Program" was not based on actual trading but was the result of purported hypothetical trading, and (3) Castillo admitted that he was not trading his own funds.

iii.   Failure to Disclose Limitations of Hypothetical Trading

40.     Through the Wall Street War websites, Castillo and Castle represented the purportedly highly profitable performance and near-perfect accuracy of the advisory services being offered without revealing that such "trading" was based on hypothetical or simulated

10

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

performance by displaying the required statement prominently disclosing the inherent limitations of hypothetical or simulated performance.

    iv.  <u>Unregistered CTA Activities</u>

    41.  Neither Castillo nor Castle have ever been registered with the Commission in any capacity, nor are they otherwise exempt from any registration requirement of the CEA.

    42.  During the relevant time, while unregistered, Castle, through the Wall Street War websites and otherwise, held itself out to the general public as, among other things, a manager of commodity interest accounts, where Castillo would exclusively direct the trading in managed accounts for profit, and as a provider of other commodity advisory services such as the Wall Street War Advisory Service. Castillo, as an officer and agent of Castle, solicited clients' or prospective clients' discretionary accounts on behalf of Castle, and thereby acted as an AP of Castle.

    v.  <u>Castillo is a Controlling Person</u>

    43.  Castillo is the founder, President and only officer of Castle. Castillo is the sole signatory on the Castle bank account. Castillo was solely responsible for the content of the Wall Street War websites, including the fraudulent advertising that appeared on those websites, as set forth above.

C.    CONCLUSIONS OF LAW

    44.  This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

11

45.     This Court has personal jurisdiction over Defendant Castillo, who acknowledges service of the Summons and Complaint and consent to the Court's jurisdiction over him.

46.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2002), in that the Defendant is found in, inhabits, or transacts business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

47.     By reason of its conduct, Castle acted as a CTA without being registered with the Commission, in violation of Section 4m(1) of the CEA, 7 U.S.C. § 6m(1).

48.     By the conduct described herein, Castillo violated Sections 4o(1)(A) and (B) of the CEA, 7 U.S.C. §§ 6o(1)(A) and (B), and Regulations 4.41(a)(1) and (2), 17 C.F.R. §§ 4.41(a)(1) and (2), in that Castillo, while acting as an AP of a CTA, through the means or instrumentalities of interstate commerce, employed devices, schemes or artifices to defraud clients or prospective clients and engaged in transactions, practices or courses of business which operated as a fraud or deceit upon clients or prospective clients.

49.     By reason of his conduct, Castillo acted as an AP of a CTA without being registered with the Commission, in violation of Section 4k(3) of the CEA, 7 U.S.C. § 6k(3).

50.     By virtue of his conduct, Castillo is directly liable for violations of Regulation 4.41(b)(1), 17 C.F.R. § 4.41(b)(1), by representing performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a CTA not accompanied by the prescribed cautionary statement.

51.     Castillo directly or indirectly controlled Castle and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting its violations of the CEA and

12

1 │ Regulations pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b).  Accordingly, Castillo is

2 │ liable as a controlling person for Castle's violations of the CEA and the Regulations.

3 │ IV.

4 │
5 │ ORDER OF PERMANENT INJUNCTION AND ANCILLARY RELIEF

6 │ 52.     This Court, being fully advised in the premises, finds that there is good cause for

7 │ the entry of this Order and that there is no just reason for delay.

8 │
9 │ A.      IT IS HEREBY ORDERED that Castillo, along with any of his agents, servants,

10 │ employees or assigns and persons in concert or participation with him who receive actual notice

11 │ of this Order by personal service or otherwise, and all other persons or entities served with a

12 │ copy of this Order, is permanently restrained, enjoined, and prohibited from directly or

13 │ indirectly:

14 │
15 │ i.       While acting as a CTA, or an AP of a CTA, employing a device, scheme, or

16 │ artifice to defraud clients or participants, or engaging in a transaction, practice or a course of

17 │ business that operates as a fraud or deceit upon participants, in violation of Sections 4o(1)(A)

18 │ and (B) of the CEA, 7 U.S.C. §§ 6o(1)(A) & (B), and Regulations 4.41(a)(1) and (2), 17 C.F.R.

19 │ §§ 4.41(a)(1) and (2), including, but not limited to, conduct such as that set forth in Section II.A

20 │ above;

21 │
22 │ ii.      Acting as a CTA without being registered with the Commission, in violation of

23 │ Section 4m(1) of the CEA, 7 U.S.C. § 6m(1).

24 │ iii.     Acting as an AP of a CTA without being registered with the Commission in

25 │ violation of Section 4k(3) of the CEA, 7 U.S.C. § 6k(3).

26 │
27 │ iv.      Presenting the performance of any simulated or hypothetical commodity interest

28 │ account, transaction in a commodity interest or series of transactions in a commodity interest of a

13

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

commodity pool operator, CTA, or any principal thereof, unless such performance is accompanied by a prescribed cautionary statement concerning the limitations of simulated or hypothetical trading results, in violation of Regulation 4.41(b)(1), 17 C.F.R. § 4.41(b)(1).

      B.     IT IS HEREBY FURTHER ORDERED that Castillo is permanently restrained, enjoined, and prohibited from directly or indirectly engaging in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

      a.     Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

      b.     Engaging in, controlling, or directing the trading of any commodity interest accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

      c.     Soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

      d.     Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of commodity interest contracts for himself and others;

      e.     Introducing customers to any other person engaged in the business of commodity interest trading;

      f.     Issuing statements or reports to others concerning commodity interest trading;

      g.     Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required

1   to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9),

2   17 C.F.R. § 4.14(a)(9); and

3

4         h.      Engaging in any business activities related to commodity interest trading.

5   C.    IT IS HEREBY FURTHER ORDERED that the injunctive provision of this Order shall be

6   binding upon Defendant Castillo, upon any person who acts in the capacity of an agent, employee,

7   representative, and/or assign of Defendant Castillo and upon any person who receives actual notice

8   of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or

9   participation with Defendant Castillo.

10

11                                          V.

12              ORDER FOR RESTITUTION, CIVIL MONETARY PENALTY AND
                           OTHER EQUITABLE RELIEF
13

14        IT IS HEREBY ORDERED that:

15        i.      Restitution

16        53.     Castillo shall pay restitution in the amount of $92,474.60, plus post-judgment

17   interest (the "Restitution Obligation").

18        54.     The amount of restitution assessed against Defendant Castillo represents the full

19

20   amount of funds fraudulently solicited by him from customers of his managed accounts and

21   managed account services.

22        55.     Post-judgment interest on the Restitution Obligation shall accrue beginning on the

23   date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on

24   the date of entry of this Order pursuant to 28 U.S.C. § 1961.

25

26        56.     Appointment of Monitor: To effect payment by the Defendant of

27   the Restitution Obligation, the Court appoints the National Futures Association

28   ("NFA") as Monitor ("Monitor"). The Monitor shall collect restitution and

1  disgorgement payments from the Defendants, and make distributions as set forth

2  below.  Because the Monitor is not being specially compensated for these

3  services, and these services are outside the normal duties of the Monitor, the

4

5  Monitor shall not be liable for any action or inaction arising from the Monitor's

6  appointment, other than actions involving fraud.

7      57.    The Defendant shall make his required payment of restitution

8  under this Order in the name ""Castle Corporation Settlement Fund"" and shall

9

10 send such payment by electronic funds transfer, or by U.S. postal money order,

11 certified check, bank cashier check, or bank money order, to Office of

12 Administration, National Futures Association, 300 South Riverside Plaza, Suite

13 1800, Chicago, Illinois 60606 under cover letter that identifies the name of the

14 Defendant and the name and docket number of the proceeding.  The Defendant

15 shall simultaneously transmit copies of the cover letter and the form of payment

16

17 to (a) the Director, Division of Enforcement, U.S. Commodity Futures Trading

18 Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C.

19 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of

20 Enforcement, at the same address.

21     58.    The Monitor shall oversee the Restitution Obligation, and shall

22

23 have the discretion to determine the manner for distribution of funds in an

24 equitable fashion to Defendant's defrauded customers, as appropriate, or may

25 defer distribution until such time as it may deem appropriate.  In the event that the

26 amount of restitution payments to the Monitor are of a de minimis nature such

27 that the Monitor determines that the administrative costs of the making a

28

16

distribution to Defendant's defrauded customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V. ii., below.

59.   To the extent that any funds accrue to the U.S. Treasury as a result of either the Restitution Obligation in this Order, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth in paragraph 56 above.

ii.   Civil Monetary Penalty

60.   Good cause exists for the imposition of a civil monetary penalty ("CMP") upon the Defendant pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002).

61.   Defendant shall pay a CMP in the amount of $180,000, plus post-judgment interest (the "CMP Obligation").

62.   Post-judgment interest shall accrue beginning on the date of entry of this Order and will be calculated by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

63.   Defendant shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made by other than electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 S. Macarthur Blvd.
> Oklahoma City, OK 73169

17

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

Telephone: 405-954-6569

If the payment is to be made by electronic funds transfer, Defendant shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. The Defendant shall accompany his payment of this CMP Obligation with a cover letter that identifies the Defendant and the name and docket number of this proceeding. The Defendant shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

iii.    Priority Of Monetary Sanctions And Partial Payments

64.    All payments by the Defendant pursuant to this Order shall first be applied to satisfaction of the Restitution Obligation, consistent with the authority granted the Monitor in Part V. i., above. After satisfaction of the Restitution Obligation, payments by Defendant pursuant to this Order shall be applied to satisfy Defendant's CMP Obligation.

65.    Any acceptance by the Commission and/or Monitor of partial payment of the Restitution Obligation and/or CMP Obligation shall not be deemed a waiver of the Defendant's requirement to make further payments pursuant to this Order, or a waiver of the Commission's and/or Monitor's right to seek to compel payment of any remaining balance.

iv.    Costs And Fees

66.    Defendant is ordered to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2).

## VI.    MISCELLANEOUS PROVISIONS

67.    Notices: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

18

*Consent Order of Permanent*
*Injunction and Other Equitable Relief*
*3:06cv2540-TEH*

Notice to Commission:

Director of Enforcement
Commodity Futures Trading
Commission
1155 21st Street N.W.
Washington, DC 20581

Timothy J. Mulreany
Division of Enforcement
Commodity Futures Trading
Commission
1155 21st Street N.W.
Washington, DC 20581

Notice to Monitor:

Office of Administration
National Futures Association
300 South Riverside Plaza, Suite 1800
Chicago, IL 60606

68.    Entire Agreement and Amendments:  This Order incorporates all of the terms and
conditions of the settlement among the parties hereto.  Nothing shall serve to amend or modify
this Order in any respect whatsoever, unless:  (1) reduced to writing; (2) signed by all parties
hereto; and (3) approved by order of this Court.

69.    Invalidation:  If any provision of this Order or the application of any provisions
or circumstances is held invalid, the remainder of the Order and the application of the provision
to any other person or circumstance shall not be affected by the holding.

70.    Waiver:  The failure of any party hereto at any time or times to require
performance of any provision hereof shall in no manner affect the right of such party at a later
time to enforce the same or any other provision of this Order.  No waiver in one or more
instances of the breach of any provision contained in this Order shall be deemed to be or
construed as a further or continuing waiver of such breach or waiver of the breach of any other
provision of this Order.

71.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this
cause to assure compliance with this Order and for all other purposes related to this action.

19

1        There being no just reason for delay, the Clerk of the Court is hereby directed to enter

2    this Consent Order of Permanent Injunction and Other Equitable Relief as to Defendant Gilbert

3    Philip Castillo, Jr.

4

5

6    CONSENTED TO AND APPROVED BY:

7

8    _____
     Gilbert Philip Castillo, Jr., Individually

9

10                          Date: 4/07/08

11

12

13   Approved for Entry:

14

15   _____
     Antonio L. Cortes, Esq.

16   Attorney at Law (CA Bar No. 142356)
     317 Sylvia Way

17   San Rafael, California 94903
     Tel: 415-256-1911

18   Fax: 415-256-1919
     Attorney for Defendant

19   Gilbert Philip Castillo, Jr.

20                          Date: 4/2/08

21

22

23

24

25

26

27

28

                          20

                          *Consent Order of Permanent
                          Injunction and Other Equitable Relief
                          3:06cv2540-TEH*

1

2     Timothy J. Mulreany, Chief Trial Attorney

3     David Reed, Senior Trial Attorney
      Counsel for Plaintiff,
4     U. S. Commodity Futures Trading Commission
      1155 21st Street, NW
5     Washington, D.C. 20581
      (202) 418-5306
6

7                                  Date: 7/11/08

8

9     IT IS SO ORDERED.

10

11
      Dated:        07/11/08
12                                      THELTON E. HENDERSON, JUDGE
                                        UNITED STATES DISTRICT COURT
13

14

15    cc:   All Counsel of Record and Monitor

16

17

18

19

20

21

22

23

24

25

26

27

28

                            21